**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>$23,500 in UNITED STATES CURRENCY, )<br>    Defendant, )<br>)<br>)<br>HARRY WESLEY SWIFT, )<br>    Claimant. ) | 07 C 5427 |

**MEMORANDUM AND ORDER**

On March 1, 2007, the government seized $23,500 from the claimant, Harry Wesley Swift, at Union Station. The government subsequently filed a forfeiture complaint against the money pursuant to 21 U.S.C. § 881(a)(6), alleging that it was furnished or intended to be furnished for a controlled substance. The government's motion for summary judgment is before the court. For the following reasons, the motion is granted.

**I.     Background**

    **A.     Local Rule 56.1**

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file "a concise response to the movant's statement that shall contain: . . . (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon . . . . All material facts set forth in the

statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(B) & (C).

Swift's Local Rule 56.1(b) statement contains two kinds of responses. First, Swift restates portions of the government's facts but does not agree or disagree with the entire statement, and does not point to any evidence regarding the portion he has ignored (*e.g.*, "Swift agreed to accompany the agents to the DEA office located at Union Station in order to determine the origin of the money" turns into "Agrees that he voluntarily accompanied the agents to the DEA office in Union Station"). *See* Government's Rule 56.1(a) Statement and Swift's Rule 56.1(b) statement at ¶ 12. Second, Swift states that he lacks sufficient information to respond and demands an opportunity to cross-examine witnesses regarding the evidence specified by the government. *See, e.g.*, *id*. at 19 (Swift "cannot agree or disagree with the allegations contained in this paragraph, but demands an opportunity to cross-examine any witness testifying to these points").

Both of these types of responses are at odds with clear and extensive Seventh Circuit precedent. It is well-established that a party opposing summary judgment must admit or deny each fact in the movant's statement of facts and cite to supporting evidence, Local Rule 56.1(b)(3)(A), so the failure to include "specific references to the affidavits, parts of the record, and other supporting materials relied upon" in support of a denial may cause the movant's facts to be deemed admitted to the extent that they are supported by the record. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (unsupported denials will be deemed to be admissions). Because Swift's denials do not direct the court to any evidence in support and the government's statement of facts is

supported by corresponding evidence, all of the facts in the government's Local Rule 56.1 statement are deemed admitted. With that in mind, the court will summarize the relevant facts.

B.     Facts

On March 1, 2007, DEA agents assigned to the DEA Transportation Interdiction Group at Amtrak Union Station in Chicago, Illinois, screened the passenger manifest for that date and observed that Swift had purchased a first class ticket with cash the day before his departure from Pittsburgh, Pennsylvania to Tucson, Arizona via Chicago, Illinois. At approximately 1:45 p.m. on March 1, 2007, DEA law enforcement officers located Swift on board Train Number 21 in his sleeping car room.

The DEA agents identified themselves by displaying their credentials, explained that Swift was not under arrest, and asked to see his identification and train ticket. When the agents asked Swift why he was traveling, Swift told them that he was traveling to Arizona to visit family. In response to the agents' questions, Swift indicated that he only had carry-on luggage and that he was carrying $20,000 in cash. In addition, Swift told the agents that he was employed as a steam cleaner and intended to use the money to invest in real estate in Arizona, but said he could not provide documentation for the money from banks or any other financial institutions to show ownership because he did not like banks.

After Swift consented to a search of his luggage, the agents found five bundles of United States currency totaling $23,500 stuffed in socks and the pockets of pants that were packed in his luggage. Swift agreed to accompany the agents to the DEA office located at Union Station in order to determine the origin of the currency. While at the DEA Office, Swift read and signed a statement of rights form. He then told the agents that all of the currency was not his, and

explained that his business partner, who was a tree trimmer, had loaned him about $12,000 to buy property in Arizona. Swift could not provide any further information about his partner. However, he advised the agents that he earned about $18,000 a year as a self-employed steam cleaner, had not filed for taxes in over three years, and had a girlfriend who earned approximately $8/hour.

Special Agent Robert Glynn then arrived on the scene with Rudy, a DEA detector dog, who conducted a narcotic odor investigation on the currency. The DEA certifies narcotic detector dogs annually, and Rudy's last certification prior to March 1, 2007, was in February of 2007. Glynn advised the agents that Rudy had given a positive alert on the seized currency. As of September of 2007, Rudy had made over 50 narcotic finds on currency. Rudy has had no false positives and has had several instances of no detection.

Pursuant to 21 U.S.C. § 881(a)(6), the government filed a forfeiture action against the $23,500 seized from Swift, alleging that the defendant currency was furnished or intended to be furnished for a controlled substance. The government submitted written discovery to Swift, who responded by invoking his Fifth Amendment privilege. The government's motion for summary judgment, which is presently pending before the court, followed.

## II. Discussion

### A. Standard for A Motion For Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere

allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id*.

B.     **Forfeiture**

Under the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983(c)(1), forfeiture of property is appropriate if the United States demonstrates by a preponderance of the evidence that the property is subject to forfeiture. Funds are forfeitable if they were furnished or intended to be furnished in exchange for a controlled substance. 21 U.S.C. § 881(a)(6). Moreover, the United States may use evidence gathered after the filing of the complaint to meet its burden of persuasion. 18 U.S.C. § 983(c)(2).

Here, the government has pointed to a string of facts and urges the court to find that when viewed together, they establish by a preponderance of the evidence that the money taken from Swift was furnished or intended to be furnished in exchange for a controlled substance. Specifically, the government notes that Swift bought a first class ticket with cash the day before his departure, was traveling to a drug-source city (Tucson, Arizona) near the border, and was carrying a substantial amount of money in an unusual manner (stuffed into socks and the pockets of pants packed in his carry-on luggage). In addition, Swift was unable to provide a verifiable reason for his travel or any documentation regarding the origins and intended use of the money. Moreover, $9,000 of the money seized, in $100 bills, was in Swift's wallet, but he told the agents

that he earned about $18,000 a year as a self-employed steam cleaner, had not filed for taxes in over three years, and was dating someone who earned approximately $8/hour. Next, Swift told the agents that his unnamed business partner, who was a tree trimmer, gave him $12,000 of the money that was seized so he could purchase property in Arizona, but could not provide any details about the alleged partner. Finally, Rudy, a DEA detector dog, alerted when he sniffed the money.

As the government suggests, the court must "consider the totality of the evidence as a whole and in the appropriate context." *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 469 (7th Cir. 2005). The court agrees with the government that taken as a whole, the facts of this case are highly suspicious. Indeed, they are extremely close to the facts of another forfeiture case, *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*. *Id*. In that case, the claimant traveled to Phoenix, "a recognized source city for illegal narcotics," via a one way ticket purchased with cash the day of travel. *Id*. Swift also traveled to Arizona using a one way, first class ticket purchased the day before travel, despite the fact that he earned $18,000 annually and the expense involved in purchasing a ticket at the last minute. *See id*. ("As any savvy air traveler knows, this practice virtually guarantees higher fares, and someone in [the claimant's] position – unemployed and with no regular income for months – would seem especially unlikely to be a spendthrift under such circumstances").

The claimant in *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, like Swift, could also point to no evidence showing a legitimate reason for his trip. *Id*. The Seventh Circuit also found that his explanation as to why he was carrying "a

substantially large sum of money" (which is identical to Swift's explanation) was not credible given his overall financial situation and his contention that the money belonged to a friend whom he refused to name. *See id*. at 468. Similarly, neither claimant pointed to any evidence showing that the seized cash was earned legitimately. *See id*. Finally, a DEA dog alerted to the money seized in both this case and *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*. *Id*.

Based on that record, the Seventh Circuit concluded that the government had satisfied its burden to prevail on summary judgment in a forfeiture case, as "[t]he totality of the circumstances in this case, including the issues discussed above, lead to only one reasonable conclusion – [the claimant's] cash hoard was substantially connected to illegal drug trafficking and properly subject to forfeiture." *Id*. Swift nevertheless asserts that summary judgment should be denied because: (1) this case is factually similar to *United States v. $506,231 in U.S. Currency*, 125 F.3d 442 (7th Cir. 1997), which was resolved in favor of the claimant; (2) Swift's explanations were credible, so the government failed to carry its burden of proof; (3) the evidence about the positive dog sniff is unreliable; and (4) he should be allowed to cross-examine all of the government's witnesses before the court makes a decision. These arguments are unavailing.

First, *United States v. $506,231 in United States Currency*, 125 F.3d 442 (7th Cir. 1997), which was resolved in favor of the claimant, is inapposite. In that case, the government's evidence consisted of the existence of the money (which was consistent with the cash-driven nature of the pizzeria from which it was seized), evidence from a confidential informant (whom the government conceded "did not directly tie this money to any drug trafficking"), and the

presence of firearms at the pizzeria. *Id*. at 453. In contrast, the claimant here has not presented any credible explanation regarding the money and how it was stored, his travel situation, or the source of the money. Moreover, the government's evidence (including the unusual circumstances surrounding Swift's travel, his decision to stash a very substantial amount of cash in socks and pockets, his financial background, his inability to provide credible answers about the source of the cash or his professed intent to purchase property with money from an unknown tree trimmer, and the alert signaling the presence of the odor of illegal drugs by a reliable drug detection dog) is compelling and uncontroverted.

The court also notes that in *United States v. $506,231 in United States Currency*, the Seventh Circuit discounted evidence of a positive dog alert. However, that holding is no longer good law. *See United States v. Funds in the Amount of Forty-Five Thousand Fifty Dollars*, No. 06 C 6948, 2007 WL 2323307, at *4 (N.D. Ill. Aug. 9, 2007) (noting that the ruling in *United States v. $506,231 in United States Currency* "was called into question, if not overturned" by *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, in which the Seventh Circuit upheld a grant of summary judgment to the government in a forfeiture action where a positive dog sniff was the most important evidence offered to establish a "substantial connection" between the seized currency and illegal narcotics and rejected its earlier position that dog sniff evidence was not entitled to probative weight). Thus, the court declines to strike evidence about the dog alert and, more generally, Swift's reliance on *United States v. $506,231 in United States Currency* is unconvincing because the facts are highly distinguishable.

Second, Swift contends that his statements were sufficient to explain the presence of the money so the government failed to carry its burden of proof. The court disagrees, for the reasons

discussed above. Once the government demonstrates probable cause, as it has done here, the burden shifts to the claimant to contradict the government's evidence. *See, e.g., United States v. Fleming*, 677 F.2d 602, 609 (7th Cir. 1982). Perhaps Swift could have done better had he come forward with evidence supporting his view of the record, but he declined to do so as he invoked the Fifth Amendment in response to the government's discovery requests asking him to list facts underlying any claim that the money was not the proceeds of illegal drug trafficking activity and to describe the source or sources from which he obtained the money.

He is absolutely entitled to do so, but having made this choice, he cannot carry his burden of proof. *See United States v. One 1985 Plymouth Colt Vista*, 644 F. Supp. 1546, 1550-53 (N.D. Ill. 1986) (Fifth Amendment privilege against self incrimination is not a substitute for evidence in forfeiture case, so if the government's evidence is unrebutted, "a showing of probable cause alone will support a forfeiture"). This is especially true since the court may draw an adverse inference from Swift's invocation of the Fifth Amendment. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("the prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"); *United States v. One 1985 Plymouth Colt Vista*, 644 F. Supp. at 1550-53 (rejecting claimant's argument that he should not have to meet his burden because he could do so only by incriminating himself). Here, however, even without an adverse inference, Swift's position is wholly unconvincing, as all of the substantial circumstantial evidence is suspicious, and the explanations proffered by Swift are incredible.

Finally, Swift appears to be contending that the evidence about the positive dog sniff is unreliable and that he should be allowed to cross-examine all of the government's witnesses

before the court makes a decision. This position is fundamentally at odds with how motions for summary judgment work in civil cases. As noted above, the party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A party opposing a motion for summary judgment must thus "wheel out all its artillery to defeat it." *Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency*, 846 F.Supp. 677, 685 (N.D. Ill. 1994). Moreover, if Swift wanted to pursue discovery, he should have done so. He cannot defeat a motion for summary judgment by asking for permission to cross-examine the government's witnesses when the government's evidence is ample and facially credible and he fails to present any evidentiary support whatsoever for his position.

Accordingly, the court finds that the government has pointed to uncontroverted evidence showing that it is more likely than not that the defendant funds are the proceeds of, or were intended to facilitate, an illegal drug transaction. Moreover, as discussed above, Swift has not carried his burden of contradicting any of the government's evidence, as unsupported speculation is not enough to withstand a motion for summary judgment. The court, therefore, finds that the defendant funds are forfeitable to the United States and grants the government's motion for summary judgment.

**III.     Conclusion**

For the above reasons, the government's motion for summary judgment [#18] is granted. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.


DATE:   November 17, 2008            _____
                                     Blanche M. Manning
                                     United States District Judge